# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
## Senior Judge Marcia S. Krieger

Civil Action No. 18-cv-01892-MSK

**IVAN DALLAS CHEASEBRO,**

    Plaintiff,

v.

**COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,**

    Defendant.

---

## OPINION AND ORDER AFFIRMING THE COMMISSIONER'S DECISION

---

**THIS MATTER** comes before the Court on the Plaintiff's Complaint **(# 1)**, the Plaintiff's Opening Brief **(# 20)**, the Defendant's Response **(# 22)**, and the Plaintiff's Reply **(#23)**. For the following reasons, the Commissioner's decision is affirmed.

### I. JURISDICTION

The Court has jurisdiction over an appeal from a final decision of the Commissioner under 42 U.S.C. § 405(g).

### II. BACKGROUND

**A. Procedural History**

Plaintiff Ivan Cheasebro ("Mr. Cheasebro") seeks judicial review of a final decision by the Defendant Commissioner ("Commissioner") denying his application for supplemental security income ("SSI") under the Social Security Act. In July 2014, Mr. Cheasebro filed for

1

SSI, claiming he became disabled in December 2012.[1]  (**# 16-5 at 147-52**).   Following a January 31, 2017 hearing before an Administrative Law Judge ("ALJ"), Mr. Cheasebro received an unfavorable decision dated June 1, 2017 ("Decision").  (**# 16-2 at 19**).   Mr. Cheasebro appealed that Decision to the Appeals Council.   However, on June 8, 2018, the Appeals Counsel denied his Request for Review.  (**# 16-2 at 1**).   Mr. Cheasebro now appeals the final agency action to this Court.

**B.   Factual Background**

Mr. Cheasebro was born on September 15, 1996, thus, he was 17 years old on July 29, 2014, the date the application was filed.   However, on the date of the hearing, he was 20 years old.  (**# 16-2 at 49-50**).   Mr. Cheasebro had been homeschooled and ultimately graduated from high school in December 2015.   He has never worked.  (**# 16-2 at 51-52**).

**Hearing Testimony**

At the January 31, 2017 hearing, Mr. Cheasebro was advised that he had the right to be represented by an attorney or a non-qualified attorney at his own cost.   He elected to proceed without representation.  (**# 16-2 at 45-46**).   In response to the ALJ's questions, Mr. Cheasebro testified that he became disabled on December 1, 2012 when he slipped and fell at the Dollar Store and injured his back and leg.  (**# 16-2 at 49**).   Mr. Cheasebro stated that he lives with his mother in Lamar, Colorado, who is also unemployed and on disability due to both leg and back pain.  (**# 16-2 at 49-53**).

In July 2015, Mr. Cheasebro moved from Aurora, Colorado to Lamar, Colorado.   Mr.

---

[1]   Mr. Cheasebro previously applied for SSI.   His prior application was denied in January 2012 and is not at issue in this Opinion.  (**# 16-6 at 171**).

Cheasebro stated that he started treating with his current provider, Margaret Loewen, M.D., in September 2016. Prior to that, he was treated by Augustine Obinnah, M.D., Joshua Norman, PAC, Nicholas Durst, DPT, and Sharon Headrick, LCSW, CAC-III. Ms. Cheasebro testified that the only medications he currently takes are over-the-counter Tylenol and Gabapentin. While he stated that the Tylenol works 50% of the time and the Gabapentin "works," he still has "very bad days." **(# 16-2 at 53-58)**. Mr. Cheasebro testified that he does not take any medications for mental health issues. **(# 16-2 at 58)**. As part of a treatment plan for his pain, Mr. Cheasebro has undergone multiple back injections and physical therapy. He has had no surgeries but has sought emergent treatment at hospitals on several occasions. **(# 16-2 at 58-60)**. Mr. Cheasebro stated that he uses a cane and just acquired a wheelchair a "couple of days ago." **(# 16-2 at 60)**.

    Mr. Cheasebro rated his back pain as 4.5/5 at best to a 10 at worst on a scale of 1 to 10. He stated that his back pain radiates down his legs and is "episodic" and occurs 5-6 times a day. **(# 16-2 at 60-62)**. He also testified that due to his pain, he can only walk 20-35 feet, lift two gallons of water, and cannot hold his arms over his head without numbness. He further testified that he cannot kneel, crawl, or squat. **(# 16-2 at 65-67)**. Mr. Cheasebro testified that he usually stays in bed at least 2 days a week due to his pain. When he does get out of bed, he stated he will prepare frozen meals, watch internet videos or movies, play video games, and build with legos. **(# 16-2 at 65-82)**. He further stated that he has trouble sleeping and wakes up "constantly" during the night due to the pain. **(# 16-2 at 71)**. Mr. Cheasebro tries to assist his mother with household chores but is limited by his pain. **(# 16-2 at 71-77)**. Further, he does no volunteer work nor gets any exercise other than walking to get the mail. **(# 16-2 at 77-81)**.

**Medical Evidence**

The Court summarizes only the medical evidence relevant to its decision. The medical records suggest that Mr. Cheasebro had a fall in December 2011. Treatment notes from 2012 to 2016 document Mr. Cheasebro's ongoing complaints of back and knee pain. From 2012 to 2015, Mr. Cheasebro's primary care doctor, Dr. Obinnah, noted "normal" examination findings, prescribed pain medications, and administered multiple steroid injections. **(# 16-9 at 325-420)**. In April 2012, Dr. Obinnah noted that an MRI on Mr. Cheasebro's right ankle was "negative." **(# 16-9 at 416)**. In June 2013, Dr. Obinnah noted that an MRI on Mr. Cheasebro's right knee was "reviewed and was within normal limits." **(# 16-9 at 412)**. In January 2013, Dr. Obinnah reported that he "discussed the possibility of psychosomatic issues as a possible cause of the patient's pain syndrome." **(# 16-9 at 403)**. In April 2013, Dr. Obinnah reported that he had an "extensive discussion with [Mr. Cheasebro and his mother] regarding possible etiologies for his pain since a lot of his tests so far including the MRIs have been negative." **(# 16-9 at 395)**. Dr. Obinnah opined that Mr. Cheasebro "most likely has myofascial pain, possibly related to RSD, although the patient has a more generalized pain situation." **(# 16-9 at 395)**.

In January 2015, Mr. Cheasebro had another MRI on his back that revealed "normal" results. **(# 16-9 at 339)**. In July 2015, Dr. Obinnah reported that Mr. Cheasebro had "no new complaints other than having to live in his car for the moment due to being homeless." **(# 16-9 at 325)**. In 2016, Mr. Cheasebro attended physical therapy, but the Daily Progress Notes indicated "very poor participation." **(# 16-7 at 312)**. In October 2016, Mr. Cheasebro's physical therapist reported "no appreciable gains" and recommended he return to his primary care provider for "consideration of other interventions." **(# 16-10 at 531-32)**.

4

In July 2016, Mr. Cheasebro fell in the shower and sought emergent treatment for a shoulder injury at the Prowers Medical Center. **(# 16-8 at 322)**. X-rays were "normal," and Mr. Cheasebro was discharged with a diagnosis of "left shoulder pain," and given a sling until he "feel[s] better." **(# 16-8 at 324, 540)**.

In March 2017, Mr. Cheasebro underwent another MRI of his spine which showed "subtle disc bulging from L3-4 through L5-S1." However, there was "no substantial canal or foraminal stenosis" and "[n]o evidence of fracture or malalignment." **(# 16-11 at 589-90)**.

**Medical Opinions**

In October 2014, James J. Wanstrath, Ph.D., an agency psychological consultant, provided a mental assessment of Mr. Cheasebro. **(# 16-7 at 284-86)**. He opined Mr. Cheasebro was mentally capable of doing work "not involving significant complexity or judgment," could do work requiring up to 3 months to "learn techniques, acquire information and develop facility," but could not "work closely with the public, supervisors or coworkers." **(# 16-7 at 285)**.

Also in October 2014, Aimee Henley, Ph.D., performed a consultative mental examination of Mr. Cheasebro. **(# 16-7 at 263-67)**. She opined Mr. Cheasebro had no impairment in: remote memory; recent memory; persistence and pace; and ability to manage funds. She found mild impairment in comprehension and moderate impairment in: attention and sustained concentration; adaptation; and ability to work successfully with others. **(# 16-7 at 267)**.

In November 2014, Joseph Sever, M.D., performed a consultative physical examination of Mr. Cheasebro. **(# 16-7 at 291)**. Dr. Sever noted Mr. Cheasebro's history of back, knee and

5

ankle pain that has never been definitively diagnosed.  Dr. Sever also noted Mr. Cheasebro's past negative MRI findings along with the more recent MRI finding showing questionable nerve root irritation at the L5 level bilaterally.  **(# 16-7 at 295)**.  Dr. Sever opined that Mr. Cheasebro would be limited to standing or walking for no more than two hours in an eight-hour day, lifting 20 pounds occasionally and 10 pounds frequently, and limited twisting, bending, squatting, and crawling.  **(# 16-7 at 295)**.

In November 2014, Pamela McKenzie, M.D., evaluated the record and opined that Mr. Cheasebro was not disabled under the agency's definition for child disability.  **(# 16-3 at 95-103)**.

**C.     The ALJ's Decision**

In June 2017, the ALJ issued a Decision unfavorable to Mr. Cheasebro.  At step one, the ALJ found he had not engaged in substantial gainful activity since July 29, 2014, the application date.  **(# 16-2 at 21)**.  At step two, the ALJ found Mr. Cheasebro had the following severe impairments: back strain, adjustment disorder with anxiety, and somatic disorder.  **(# 16-2 at 21)**.  At step three, the ALJ found that as of the date of Mr. Cheasebro's 18th birthday, he did not have an impairment that met or medically equaled the presumptively disabling conditions listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  **(# 16-2 at 21)**.  In making this finding, the ALJ considered Mr. Cheasebro's mental impairments, finding he had moderate limitations in the activities of: "understanding, remembering, or applying information;" "interacting with others;" "concentrating, persisting, or maintaining pace;" and "adapting or managing oneself."[2]  **(# 16-2**

---

[2]     The ALJ's analysis followed the process for evaluating mental impairments, and the categories of such impairments, as prescribed by the Commissioner's regulations.  These include the "psychiatric review technique," or "PRT," and the so-called "paragraph B" and

**at 22-23**).

The ALJ then assessed Mr. Cheasebro's Residual Functional Capacity ("RFC") as of the date of his 18th birthday and determined that:

> he has the residual functional capacity to perform light work as defined in 20 § C.F.R. 416.967(b) as follows: he can lift, carry, push, and pull 10 pounds frequently and 20 pounds occasionally; he can walk and stand for 2 hours in an 8 hour workday; he can occasionally climb ramps, stairs, ladders, ropes, or scaffolds; he can occasionally stoop, twist, squat, crouch, and crawl; he can understand, remember, and carry out unskilled and semi-skilled tasks with an SVP level of 4 and a GED reasoning level of 3; he can occasionally interact with the public, coworkers, and supervisors, but cannot work in tandem with coworkers and supervisors and he cannot work directly with the public.

(**# 16-2 at 23-24**). In fashioning Mr. Cheasebro's RFC, the ALJ discussed much of the medical evidence in the record. The ALJ observed that many of the medical records were inconsistent with Mr. Cheasebro's claims regarding the severity of the limitations resulting from his impairments. Additionally, the ALJ gave "great weight" to the opinions of Dr. McKenzie and Dr. Henley and "some weight" to the opinions of Dr. Wanstrath and Dr. Sever. (**# 16-2 at 28-29**). The ALJ also found the treatment notes, examination findings and objective diagnostic testing results to be inconsistent with Mr. Cheasebro's statements regarding the intensity, persistence, and limited effects of his symptoms.

Then, because Mr. Cheasebro did not turn 18 years old until six weeks after he filed his SSI application, the ALJ evaluated his "functional equivalence for children" as set forth in 20

---

"paragraph C" criteria for describing adult mental disorders. *See generally* 20 C.F.R. §§ 404.1520a(c)–(d); *see also* Social Security Ruling 96-8P, 1996 WL 374184, at *4 (July 2, 1996). The regulations identify four functional areas in which the ALJ will rate the degree of a claimant's functional limitations, including: (1) the ability to understand, remember or apply information; (2) the ability to interact with others; (3) the ability to concentrate, persist, or maintain pace; and (4) the ability to adapt or manage oneself. 20 C.F.R. § 404.1520a(c)(3).

C.F.R. § 416.926a. In order to establish that a child "functionally" equals a listing, the claimant must establish that he has an impairment that results in "marked limitations in two domains of functioning or an extreme limitation in one domain." 20 C.F.R. § 416.926a(a) (internal quotation marks omitted). The Agency considers how a child functions in the actions in the following six domains (broad areas of functioning intended to capture all of what a child can or cannot do): (1) Acquiring and using information; (2) Attending and completing tasks; (3) Interacting and relating with others; (4) Moving about and manipulating objects; (5) Caring for yourself; and (6) Health and physical well-being. 20 C.F.R. § 416.926a(b)(1). As to Mr. Cheasebro, the ALJ found "less than a marked limitation" in all six domains, thus, Mr. Cheasebro did not functionally equal any listed impairment and was not disabled prior to reaching the age of 18 years old. **(# 16-2 at 29-34)**.

The ALJ then found, at step four, that Mr. Cheasebro had no past relevant work. **(# 16-2 at 34)**. At step five, based on the testimony of the vocational expert ("VE"), the ALJ concluded that, considering Mr. Cheasebro's age, education, work experience, and RFC, he could perform a reduced range of "light, unskilled" jobs in the national economy such as: addressing clerk (sedentary exertion); document preparer (sedentary exertion); and hand bander (light exertion).[3] **(# 16-2 at 34)**.

The ALJ therefore found that Mr. Cheasebro was not disabled after turning 18 years of

---

[3] In his reply brief, Mr. Cheasebro complains that he cannot find work in his rural farming community. **(# 23 at 2)**. While Courts do not generally consider issues raised for the first time in a reply brief, *Simmons v. Colvin*, 635 F. App'x 512, 514 n.2 (10th Cir. 2015), the Court rejects the argument as meritless because step five requires a showing that a significant number of jobs exist in the national economy, "regardless of whether such work exists in the immediate area in which [a claimant] lives." 42 U.S.C. § 423(d)(2)(A).

age as defined by the Social Security Act.

## III. STANDARD OF REVIEW

Though the Court's review is *de novo*, the Court must uphold the Commissioner's decision if it is free from legal error and the Commissioner's factual findings are supported by substantial evidence. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005). Substantial evidence is evidence a reasonable person would accept to support a conclusion, requiring "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The Court may not reweigh the evidence, it looks to the entire record to determine if substantial evidence exists to support the Commissioner's decision. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

## IV. DISCUSSION

Mr. Cheasebro initiated and prosecuted this appeal without the assistance of an attorney. Accordingly, the Court reads his pleadings liberally. *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). Such liberal construction is intended merely to overlook technical formatting errors and other defects in Mr. Cheasebro's filings. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Indeed, although he is not represented by counsel, Mr. Cheasebro must still comply with procedural rules and satisfy substantive law to be entitled to relief. *See Murray v. City of Tahlequah*, 312 F.3d 1196, 1199 n.3 (10th Cir. 2008).

Mr. Cheasebro filed a "Case Brief" asserting the following issues in his appeal:[4] (1) in

---

[4] It is difficult to discern precisely what legal error(s) Mr. Cheasebro claims the ALJ committed. However, reading his brief generously, the Court addresses the issues raised in turn along with generally reviewing the Commissioner's Decision to determine whether it is free from legal error and supported by substantial evidence. *Fischer–Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005).

denying his request for review, the Appeals Council failed to consider additional evidence dated December 13, 2017 and April 10, 2018; (2) the ALJ refused to allow Mr. Cheasebro's mother to remain in the room during his January 2017 hearing; (3) the agency repeatedly stated Mr. Cheasebro was not gainfully employed; (4) Dr. Sever's report was inconsistent with his oral statements; (5) pages 294 and 301 of the records are inconsistent and Mr. Cheasebro is unfamiliar with the person who signed page 306; (6) page 258 of the record relates to Mr. Cheasebro's mother, not Mr. Cheasebro; (7) pages 311-317 are handwritten and Mr. Cheasebro cannot read them; (8) pages 171-172 refer to an interview Mr. Cheasebro does not remember or recognize; and (9) Mr. Cheasebro cannot perform the activities set forth in the ALJ's RFC. (**# 20**).

### Additional Evidence Submitted to the Appeals Council

Mr. Cheasebro first argues that the Appeals Council erred in denying his request for review and in doing so, finding his additional medical records, dated December 13, 2017 and April 10, 2018, did not relate to the period at issue. (**# 16-2 at 1-2**). Pursuant to 20 C.F.R. § 416.1470(a), the Appeals Council will consider the evidence in the ALJ hearing record and any "additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." However, if a claimant submits new evidence that does not relate to the period on or before the date of the ALJ's decision, "the Appeals Council will send [the claimant] a notice that explains why it did not accept the additional evidence and advises [the claimant] of [his or her] right to file a new application." § 416.1470(c). Here, in the Notice of

Appeals Council Action, the Appeals Council denied Mr. Cheasebro's request for review stating that the ALJ decided his case through June 1, 2017, and the proffered additional evidence did not relate to the period at issue. In other words, the Appeals Council found the new evidence would not affect the ALJ's Decision as to whether Mr. Cheasebro was disabled on or before June 1, 2017. The Appeals Council "considered [Mr. Cheasebro's] reasons and exhibited them" and made his additional evidence "part of the record." **(# 16-2 at 1-9)**.

"[T]he Appeals Council must consider additional evidence offered on administrative review—after which it becomes a part of our record on judicial review—if it is (1) new, (2) material, and (3) related to the period on or before the date of the ALJ's decision." *Krauser v. Astrue*, 638 F.3d 1324, 1328 (10th Cir. 2011) (citing *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004)). However, "the Appeals Council is not required to expressly analyze new evidence when it denies review;" it must only consider the new evidence, and a "conclusory statement that it has done so is sufficient." *Vallejo v. Commissioner, SSA*, 762 F. App'x 532, 533 (10th Cir. 2019). Accordingly, here, the Appeals Council did all it was required to do under the regulations.

However, because the new medical records dated December 13, 2017 and April 10, 2018 were accepted into the record, the Court must still consider whether the ALJ's Decision is supported by substantial evidence in the record as a whole, including these two new records. *See Vallejo v. Berryhill*, 849 F.3d 951, 956 (10th Cir. 2017) (holding that when evidence is submitted to the Appeals Council and it becomes a part of the record, the district court must "conduct a substantial evidence review by assessing the entire agency record," including the new "never-before assessed opinion."). The medical record dated December 13, 2017 is from an

appointment with Mark Porter, M.D. Dr. Porter noted Mr. Cheasebro's right knee pain and "findings suggestive of potential meniscal pathology as well as patellofemoral pathology." **(#16-2 at 12)**. Dr. Porter further recommended Mr. Cheasebro undergo an MRI on his right knee. **(# 16-2 at 12)**. The medical record dated April 10, 2018 comes from an appointment with Brian Michaud, D.O., who reported Mr. Cheasebro's history of knee and back pain. Dr. Michaud noted Mr. Cheasebro's chronic pain and difficulties sleeping and participating in daily activities. Dr. Michaud further noted that Mr. Cheasebro is working with a physical therapist but has achieved little gains and is "hoping to get some assistance with Social Security/Disability." **(# 16-2 at 7-8)**. While Mr. Cheasebro reported a pain level of 8, the examination findings were normal. Dr. Michaud prescribed pain medication. **(# 16-2 at 8-9)**.

After considering this new evidence, the Court finds the ALJ's determination that Mr. Cheasebro was not under a disability for the period between July 29, 2014 and June 1, 2017 is supported by substantial evidence, even taking into account the new records from Dr. Porter and Dr. Michaud. First, these records are consistent with the wealth of other providers' treatment notes in the record. Second, Mr. Cheasebro's subjective complaints as to his back and knee pain are substantially the same as he has been making to his providers for years and are well documented in the record. Third, neither Dr. Porter nor Dr. Michaud could determine the etiology of Mr. Cheasebro's pain, and they continued to recommend the same course of treatment as previous providers (pain medication, physical therapy, etc.). The Court notes that Dr. Porter did recommend that Mr. Cheasebro undergo an MRI on his knee. However, it is unclear from the treatment notes whether this MRI ever occurred and if so, what were the results? Thus, even if these new medical records were determined to be time relevant, they are

entirely consistent with the medical records the ALJ reviewed in this case. Even after considering this post-Decision evidence, the Court cannot say the ALJ's Decision was not supported by adequate evidence in the record.

**Mrs. Cheasebro's Presence at the January 2017 Hearing**

Mr. Cheasebro next contends the ALJ erred when she refused to allow his mother to remain in the room during his January 2017 hearing. The Court has carefully reviewed the hearing transcript and all relevant documents and can find nothing that refers to Ms. Cheasebro's presence at the hearing. Neither the ALJ nor Mr. Cheasebro made any statements at the beginning of the hearing regarding whether Ms. Cheasebro was permitted to attend the hearing. Indeed, at the beginning of the hearing, the ALJ gave Mr. Cheasebro an advisement as to his right to be represented by an attorney or a qualified non-attorney representative, and Mr. Cheasebro confirmed that he wished to proceed without a representative. **(# 16-2 at 45-46)**. At no time did Mr. Cheasebro mention that he wanted his mother present for the hearing. Mr. Cheasebro has cited no evidence in the record suggesting that his mother was prohibited from staying in the room during the hearing. Thus, the Court finds no legal error.

**Challenges related to the Accuracy of the Record**

Mr. Cheasebro argues that portions of the record are inaccurate, incomplete, confusing and/or untrue. However, based on the Court's review of the appeal history, Mr. Cheasebro had an opportunity to object to the accuracy of the administrative record once it was filed with the Court by the Commissioner on October 30, 2018. **(# 13, #17, and #19)**. Mr. Cheasebro lodged no objections with the Court. Thus, because Mr. Cheasebro has not provided any evidence that the administrative record filed in this case is inaccurate or incomplete, the Court finds no legal

13

error.

**Challenges related to Mr. Cheasebro's Credibility**

Mr. Cheasebro takes issue with the Commissioner's statements that he has never been gainfully employed because he was a minor at the time he filed his SSI application. He also claims that contrary to the ALJ's RFC findings, he cannot "hop, jump, squat, run, climb onto scaffolding, climb stairs very often" due to his pain. **(# 20 at 3)**. The Court construes these arguments to be related to Mr. Cheasebro's credibility and finds no error.

Credibility determinations are the province of the finder of fact and will not be upset on appeal when supported by substantial evidence. *Newbold v. Colvin*, 718 F.3d 1257, 1267 (10th Cir. 2013). In evaluating Mr. Cheasebro's allegations regarding disabling pain, the ALJ was required to consider the evidence as a whole along with numerous factors listed in the Commissioner's regulations. 20 C.F.R. § 404.1529(c). These factors include Mr. Cheasebro's prior work record, his statements regarding his symptoms, evidence submitted by medical sources, and observations by others. 20 C.F.R. § 404.1529(c)(3). Thus, it was not improper for the ALJ to find that Mr. Cheasebro had no past work history.

Further, as to Mr. Cheasebro's complaints that he cannot perform the activities set forth in the ALJ's RFC, he cites no specific evidence to bolster his own statements nor any evidence which the ALJ failed to consider. Here, the ALJ identified and discussed the medical evidence in detail including Mr. Cheasebro's own statements describing his pain. Among other evidence, the ALJ noted that the MRI and imaging tests revealed "normal" or "subtle" findings related to Mr. Cheasebro's back pain, that he reported similar symptoms for many years, and that his treating physician suggested the possibility of psychosomatic issues as a possible cause of Mr.

Cheasebro's pain.  The ALJ also discussed the medical opinions and the weight she gave them.  Thus, the Court finds the ALJ's conclusions are supported by substantial evidence and sees no error in the ALJ's treatment of the evidence, including Mr. Cheasebro's allegations regarding his pain and its limiting effects.  "[D]isability requires more than mere inability to work without pain."  *Gossett v. Bowen*, 862 F.2d 802, 807 (10th Cir. 1988) (citing *Brown v. Bowen*, 801 F.2d 361, 362-63 (10th Cir. 1986)).  There is substantial evidence supporting the ALJ's conclusion that Mr. Cheasebro was not totally disabled and could perform the light, unskilled work described in the RFC.

## V. CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED**.  The Clerk shall enter a judgment in accordance herewith.

Dated this 22nd day of August, 2019.

**BY THE COURT:**

Marcia S. Krieger
Senior United States District Judge